QUESTIONS: 1. May a regional planning council composed of two or more counties, established under the provisions of Ch. 160, F. S., reorganize under the provisions of Parts I and II of Ch. 163, F. S.? May said council so organized then refuse to admit to membership municipalities who applied prior to reorganization? 2. In the event a municipality was admitted to membership after the regional planning council has reorganized under Ch. 163, F. S., could the municipal member be prohibited from voting? 3. In the event a municipality is admitted to membership in a regional planning council organized under Ch. 160, F. S., or Ch. 163, F. S., may the member be required to pay membership dues based upon a population per capita rate since the county wherein the municipality is located is already a member and has paid similar dues for membership?
SUMMARY: A regional planning council established by two or more counties pursuant to s. 160.01, F. S., may be dissolved by the withdrawal of all of its constituent members. The counties that formerly comprised the dissolved regional planning council may form a new intergovernmental body or group under the provisions of and as prescribed in Part II of Ch. 163, F. S., pursuant to mutual agreement. Such intergovernmental body established pursuant to Part II of Ch. 163 may refuse to admit any municipality to membership in the intergovernmental body. A nonvoting membership provision for municipalities, mutually agreed upon by all of the contracting parties in accordance with provisions of s. 163.02, F. S., or Part II of Ch. 163, F. S., does not appear to be precluded by law. "Membership dues" based on a per capita rate may be provided for by mutual agreement of the contracting parties under Part II of Ch. 163, F. S., regardless of any payment of similar "per capita dues" paid by any member county within which any participating municipality may be located. AS TO QUESTION 1: Section 160.01, F. S., provides for the establishment of a regional planning council composed of two or more counties and municipalities. There is no provision anywhere in Ch. 160, F. S., for the dissolution or reorganization of a regional planning council; however, reasonable reading of s. 160.01(1) would indicate that when the local governments forming the council withdraw their representation on and participation in the regional council to the extent that less than two members remain, the council would cease to exist. Nothing in Ch. 160 purports to compel the permanent membership or participation of any governmental body represented on the council.
In the case of the District 5 Regional Planning Council, apparently only the several county governments were members at the time of their withdrawal from the council. Therefore, what in fact took place was that all constituent county governments that were members of the council withdrew therefrom and the council was thereupon dissolved for lack of sufficient membership and representation thereon. Then, the counties that formerly comprised the former regional planning council formed a new regional planning council under Part II of Ch. 163, F. S. Such an action seems merely to be the lawful exercise of an option presented by the passage of Ch. 163, F. S., and does not seem in contravention of any statutory or constitutional provisions. The first part of question 1 is therefore answered in the affirmative. An intergovernmental program pursuant to Part I or Part II, Ch. 163, F. S., is entered into by the mutual agreement of its participants. Sections 163.02, 163.160(1), and 163.175. This differs from the language of Ch. 160, F. S., in that s. 160.01(1) permits all counties or municipalities "desiring representation" to participate. See AGO 073-402. Thus, as the intergovernmental program is to be entered into by mutual agreement and as there is no statutory provision as is seen in Ch. 160, supra, permitting participation of all counties or municipalities desiring to so participate, the constituent members of the program or organization are free to refuse membership to other counties or municipalities. The second part of question 1 is therefore answered in the affirmative. AS TO QUESTION 2: The answer to this question is similar to the second part of question 1. The various members of the intergovernmental group are given a relatively free hand as to what their agreement will provide and generally may contract with one another as their individual or common interest may dictate. However, the courts may well feel inclined to define the perimeters of this relative freedom in terms of caprice or arbitrariness shown in the exclusion of candidates for membership. A nonvoting membership provision, mutually agreed to by all the parties in accordance with the provisions of s. 163.02, F. S., or Part II of Ch. 163, F. S., does not appear to be precluded by law. If the party to be admitted on a nonvoting basis does not agree to this status, that party is free to decline membership. As noted above, however, the exercise of the power of choice in membership matters may well be subject to court-imposed limitations mandated as a result of a suit challenging the manner in which such power was exercised. Your second question is therefore answered in the affirmative. AS TO QUESTION 3: Sections 163.180(4) and 160.01(1), F. S., authorize the several designated governmental bodies to appropriate moneys to carry out the respective stipulated statutory purposes, but set no guidelines as to the source of this money. Section 163.180(4) further empowers the governing bodies, defined by s. 163.170(4), F. S., to establish a schedule of fees to be charged by the planning commission defined by s. 163.170(2) in carrying out its authorized functions and authorizes such governing body to approve expenditures by such commission and conditions the commission's authority to expend moneys appropriated to it upon such approval. It would therefore appear that "membership dues" based on a per capita rate may be provided for by mutual agreement of the contracting parties, regardless of any payment of similar "per capita dues" by any member county within which any participating municipality may be located. Your third question is therefore answered in the affirmative. Your attention is called to Ch. 75-257, Laws of Florida, entitled the Local Government Comprehensive Planning Act. This act requires, inter alia, the designation of local planning agencies for the purpose of promulgating comprehensive growth plans for local governments. The act further provides compliance deadlines for both the designation of such an agency and the adoption of a local comprehensive growth plan by the local government. You are urged to become familiar with this act, as it significantly affects the area of local comprehensive planning. Enclosed is a copy of AGO 075-280, which should be of value to you in interpreting this new law.